FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jun 06, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| WAYNE B. CLINTON,<br><br>                Plaintiff,<br><br>v.<br><br>PEND OREILLE COUNTY JAIL,<br><br>                Defendant. | No. 2:16-CV-00315-SMJ<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

## I.    INTRODUCTION

Plaintiff Wayne B. Clinton alleges that while he was incarcerated at the Pend Orielle County Jail, he was denied equal access to facilities, in violation of the Americans with Disabilities Act (ADA), and that staff at the jail were indifferent to his medical needs. Specifically, he alleges that in August 2013, he was denied the use of a walker and that he fell while showering as a result of inadequate shower facilities, causing serious injuries. He further alleges that he had serious medical conditions and symptoms, including cancer, diarrhea, night sweats, headaches, and leg pain, and that jail personnel were aware of these issues but did not provide any medical attention. The Court construes Clinton's pro se

ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT- 1

complaint as alleging disability discrimination under the ADA and violation of his Fourteenth Amendment right to adequate medical care while in pretrial detention.

Defendant moves for summary judgment, arguing that Clinton has not established a prima facie case of disability discrimination because he has not demonstrated that he has a disability or that he was excluded from or denied services based upon any disability. Defendant also argues that Clinton has not demonstrated that jail staff were deliberately indifferent to his medical needs and has submitted evidence demonstrating that jail staff were very attentive to Clinton's medical needs. Clinton has not responded to Defendant's motion or submitted any evidence.

Issues of fact remain concerning whether Clinton had a disability within the meaning of the ADA. However, because he has not demonstrated that he was excluded from participation in or denied benefits or services—in this case the ability to shower—or that he was discriminated against in some other way on the basis of a disability, he has not established a prima facie case of disability discrimination under the ADA. Clinton's medical care claim fails because Clinton has not provided any evidence that his medical needs were ignored. While Clinton need not show deliberate indifference as would be required for an Eighth Amendment claim by a post-conviction prisoner, he nevertheless cannot meet the lesser standard required for a pretrial Fourteenth Amendment claim because the

evidence in the record demonstrates that jail staff were very attentive to Clinton's medical needs and concerns and that he received adequate medical care. Notably, he was promptly seen by a physician's assistant following each of his numerous medical requests during the approximately three months he was at the jail, and he was immediately taken to the hospital emergency room after his fall. Accordingly, Defendant's motion is granted.

## II. BACKGROUND

On August 5, 2013, Clinton was booked into the Pend Oreille County Jail. ECF No. 24 at 2. On that date his medical history was noted as "terminal cancer patient, weak heart, bad teeth, Hepatitis A, and having smashed his left hand 1½ months ago." ECF No. 25 at 2. During the booking process, Clinton said he did not need any kind of special care and did not complain of any pain. *Id.*

Two days later, Clinton submitted a medical request regarding "pooping" his pants and regarding several conditions, including cancer. ECF No. 24 at 3. On August 13, 2013, Plaintiff was seen by physician's assistant (PA-C) Chris Buscher, who prescribed medications, noted that Clinton's cancer was in remission, and ordered laboratory studies. *Id.* On August 17, 2013, Clinton submitted a second medical request regarding pain in his back and legs. *Id.* On August 20, 2013, Clinton was seen by PA-C Buscher, who noted that Clinton should use a cane or walker as needed. *Id.* at 3–4. On September 2, 2013, Clinton

submitted a third medical request concerning pain in his back, neck, head, hip, and ears, and difficulty sleeping. *Id.* at 4. In response to this request, Pend Oreille County Sheriff's Office Captain Geoff Rusho scheduled an appointment for Clinton to see PA-C Buscher on September 10, 2013. *Id.*

On September 3, 2013, Clinton fell in the shower. Rusho responded, and he found Clinton lying on the floor, face up with his legs partially in the shower stall and his pants partially pulled up. *Id.* Clinton told Rusho that he fell while he was trying to put on his clothes. *Id.* Clinton stated that his head hurt and he was dizzy. *Id.*

After the fall, Clinton was immediately transported to Newport Hospital by ambulance. *Id.* He was treated for a neck strain and released the same day. *Id.* The emergency-room physician directed a follow-up visit with PA-C Buscher in seven to ten days. *Id.*

On September 6, 2013, Clinton submitted a fourth medical request, stating he was having bad headaches and was dizzy. *Id.* at 5. Clinton was seen by PA-C Buscher on September 10, 2013, who prescribed several medications to treat Clinton's symptoms. *Id.* Clinton submitted additional medical requests on September 16 and 22, complaining of similar symptoms, and he was seen again by Buscher on September 24, 2013. *Id.* At the September 24 appointment, Buscher ordered laboratory studies and a follow-up appointment. *Id.*

PA-C Buscher saw Clinton again on October 1, 2013. *Id.* at 6. Buscher conducted a physical exam and reviewed the laboratory report. *Id.* Although he found no indication of a recurrence of cancer, Buscher approved Clinton's request for a referral to a specialist. *Id.* However, Cancer Care Northwest determined consultation was not necessary after reviewing Clinton's lab studies and determining that his condition had not changed. *Id.*

Clinton submitted additional medical requests on October 7, October 14, October 19, and October 26, 2013, complaining of headaches, neck and back pain, diarrhea, and night sweats. *Id.* at 6–7. He refused to be seen by PA-C Buscher on October 15, but he was seen by Buscher on October 29. ECF No. 24 at 7. At this appointment, Buscher performed a physical examination, and based upon his assessment, ordered a colonoscopy and prescribed additional medications. ECF No. 24 at 7.

On November 4, 2013, Clinton submitted another medical request complaining of headaches and diarrhea. ECF No. 24 at 8. He was transferred to Washington Department of Corrections (DOC) custody on November 6, 2013, before a medical appointment on the November 4 request could be scheduled. ECF No. 24 at 8. The jail provided Clinton's medical records to DOC.

## III. LEGAL STANDARD

Summary judgment is appropriate if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once a party has moved for summary judgment, the opposing party must point to specific facts establishing that there is a genuine dispute for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). If the nonmoving party fails to make such a showing for any of the elements essential to its case for which it bears the burden of proof, the trial court should grant the summary judgment motion. *Id.* at 322. "When the moving party has carried its burden under Rule [56(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (internal citation omitted). When considering a motion for summary judgment, the Court does not weigh the evidence or assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Sgt. Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "In short, what is required to defeat summary judgment is simply evidence 'such that a reasonable juror drawing all inferences in favor of the respondent could return a

ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT- 6

verdict in the respondent's favor.'" *Zetwick v. Cty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (quoting *Reza v. Pearce*, 806 F.3d 497, 505 (9th Cir. 2015)).

## IV. DISCUSSION

**A.  Clinton fails to establish a prima facie case of disability discrimination.**

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. "Discrimination includes a failure to reasonably accommodate a person's disability." *Sheehan v. City & Cty. of S.F.*, 743 F.3d 1211, 1231 (9th Cir. 2014), *reversed in part on other grounds in City and Cty. of S.F. v. Sheehan*, 135 S. Ct. 1765 (2015).  To establish a prima facie case under Title II, a plaintiff must show "(1) [he] is an individual with a disability; (2) [he] is otherwise qualified to participate in or receive the benefit of a public entity's services, programs, or activities; (3) [he] was either excluded from participation in or denied the benefits of the public entity's services, programs or activities or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits or discrimination was by reason of [his] disability." *Id.* at 1232.

Defendant first argues that Clinton has not demonstrated that he has a disability. ECF No. 22 at 3–4. Defendant next argues that Clinton has not

established the third or fourth elements of a Title II claim because he has not shown that he was denied the ability to shower because of a disability. ECF No. 22 at 4.

Issues of fact remain on the issue whether Clinton had a disability. A disability is "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment (as described in paragraph (3))." 42 U.S.C. § 12102(1). Clinton alleges an inability to stand unaided, which is supported in part PA-C Buscher's recommendation that he be allowed to use a walker or cane. Viewing these facts in the light most favorable to Clinton, a fact finder could conclude that Clinton's difficulty standing rose to the level of an impairment substantially limiting major life activities.

Clinton's ADA claim nevertheless fails because he has not shown that he was excluded from participation in or denied benefits or services, or that he was otherwise discriminated against by the jail because of a disability. Clinton's complaint appears to suggest that the jail did not provide adequate facilities or assistance to permit him to shower safely. But there are no facts in the record demonstrating that he was prevented from showering, that he needed assistance or accommodation to safely shower, or that if he did need assistance or accommodation, the jail failed to provide it. The fact that he fell once in the

shower is not sufficient by itself to demonstrate denial of services or discrimination.

**B.      The evidence in the record demonstrates that Clinton received adequate medical care.**

Clinton alleges that Defendant failed to adequately provide medical care. Inmates who sue prison officials for injuries suffered while in custody may do so under the Eighth Amendment's Cruel and Unusual Punishment Clause or, if not yet convicted, under the Fourteenth Amendment's Due Process Clause. *Castro v. Cty. of L.A.*, 833 F.3d 1060, 1067–68 (9th Cir. 2016) (en banc). Because Clinton was in pretrial detention, his claim must be analyzed under the Fourteenth Amendment standard. Unlike the Eight Amendment's deliberate indifference standard, a pretrial detainee's inadequate medical care claim must be evaluated under an objective standard and does not require proof of subjective intent. *See Gordon v. Cty. of Orange*, 888 F.3d 1118, 1124–25 (9th Cir. 2018); *Castro*, 833 F.3d at 1068. "Mere lack of due care by a state official' does not deprive an individual of life, liberty, or property under the Fourteenth Amendment. Thus, the plaintiff must prove more than negligence but less than subjective intent— something akin to reckless disregard." *Gordon*, 888 F.3d at 1124–25 (quoting *Castro*, 833 F.3d at 1071) (internal citations and quotation marks omitted).

To prove a Fourteenth Amendment inadequate medical care claim, a pretrial detainee must show:

ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT- 9

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Id.* at 1125.

Defendant's arguments focus on the Eight Amendment standard and are therefore not on point here. Nevertheless, the evidence submitted by Defendant plainly demonstrates that Clinton's medical care claim fails. Jail staff were very responsive to Clinton's numerous medical requests. Clinton was seen by PA-C Buscher within a reasonable time in response to each of his requests, except for his final request, which occurred immediately prior to his transfer to DOC custody. Moreover, the evidence in the record indicates that Buscher's care was adequate. Buscher was aware of Clinton's medical history, and he conducted appropriate examinations, requested laboratory tests, and referred Clinton to an outside specialist in response to Clinton's symptoms and concerns. Additionally, Clinton was immediately taken to the hospital after he fell and he was seen for a follow up visit within a reasonable time. There is no evidence that Defendant made an intentional decision that put Clinton at substantial risk or did not take reasonably available measures to abate the risk.

## V. CONCLUSION

For the reasons discussed, **IT IS HEREBY ORDERED**:

**1.** Defendant's Motion for Summary Judgment, **ECF No. 22**, is **GRANTED**.

**2.** All claims are **DISMISSED** with prejudice.

**3.** Trial, all hearings, and other deadlines are **STRICKEN.**

**4.** The Clerk's office is directed to **ENTER JUDGMENT** in favor of Defendant consistent with this order and **CLOSE** this case.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel and pro se plaintiff.

**DATED** this 6th day of June 2018.

_____
SALVADOR MENDOZA, JR.
United States District Judge